**DAVID R. PARTOVI**
PARTOVI LAW, P.S.
900 N. Maple, Lower Level
Spokane, WA 99201
Phone (509) 270-2141
Fax (509) 326-6102
partovilaw@gmail.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, -vs- PATRICK ELLIOT PEARSON, Defendant. | NO. 2:19-CR-00111-WFN<br><br>MOTION TO SUPPRESS AND MEMORANDUM IN SUPPORT<br><br>*With Oral Argument 3/9/21 at 9am* |

## <u>MOTION TO SUPPRESS</u>

COMES NOW the Defendant, by and through co-counsel of record, David Partovi and Joseph Sullivan, and moves the Court to suppress the statements Defendant made to law enforcement on July 24, 2019 (Bates No. 10003759-3766) and the corresponding audio recording.

THIS MOTION is based on the files and records herein and upon the attached memorandum.

DATED this 19th of February, 2021.    **PARTOVI LAW, P.S.**

*s/ David R. Partovi*
DAVID R. PARTOVI, WSBA #30611
Attorney for Defendant

## MEMORANDUM

### I.   Introduction and Relevant Facts

The Defendant, Patrick Pearson, is facing a number of criminal charges before this Court based upon a lengthy investigation on the part of federal law enforcement. Mr. Pearson was arrested on July 16, 2019 and has been incarcerated awaiting trial since then.

The factors surrounding Mr. Pearson's arrest were essentially that law enforcement was serving an arrest and search warrant at his residence when Mr. Pearson chose to shoot himself, but failed to die. After a lengthy fight with a law enforcement dog, Mr. Pearson lost consciousness in a pool of his own blood and was taken into custody. He states that he woke up 10 days later in a hospital, alive.

On July 24, 2019, Mr. Pearson was under the care of Sacred Heart Hospital in Spokane, Washington, due to a self-inflicted gunshot wound. That same day, agents working on behalf of Customs and Border Protection and a detective working on behalf of Moses Lake Police Department visited Mr. Pearson in his hospital room. Those agents' purpose in visiting Mr. Pearson was to interview him regarding the charges he and certain co-defendants were facing at the time. Mr. Pearson was unable, medically, to leave and clearly would have been detained had he tried; the questions asked of him were uncontestably guilt-seeking in nature. Attached hereto

as Exhibit 1 is the U.S. Customs and Border Protection Report of Investigation regarding the visit of Mr. Pearson.

The visit of Mr. Pearson began at approximately 12:30 pm, with the agents notifying Mr. Pearson their purpose for visiting Mr. Pearson, as well as the agents *Mirandizing* Mr. Pearson.  Mr. Pearson notified the agents that he did not want to speak to them unless a lawyer was present.  Fisher, the detective from Moses Lake, left the room leaving the three remaining agents (Wells, Steen, and Savage), in the room with Mr. Pearson.

After Detective Fisher left, the remaining agents advised Mr. Pearson that Mr. Pearson could potentially help his case if he chose to cooperate with the agents.  Mr. Pearson responded to the agents that "he would tell [the agents] anything [they] want to know, as long as it had nothing to do with the shooting." *See Ex. 1.*  At this time, Mr. Pearson notified the agents that he was under the influence of certain medication, but would speak with the agents once the effects of said medication wore off.

The same day, at approximately 3:00 pm, agent Wells returned to Mr. Pearson's hospital room, and asked Mr. Pearson if he was feeling up to talking with the agents. The agent, who had been notified less than 3 hours prior that Mr. Pearson wanted an attorney and that Mr. Pearson was under the influence of strong pharmaceutical

drugs, told Mr. Pearson that he would have to be *Mirandized* again, and "understand that Agents weren't forcing or coercing him to speak."

At approximately 3:30 pm, the agents interviewed Mr. Pearson, after having Mr. Pearson sign a waiver of his *Miranda* rights.

## II. Argument

The July 24 statement made by Mr. Pearson was obtained in violation of Mr. Pearson's Fifth Amendment right against self-incrimination, as well as Mr. Pearson's Sixth Amendment right to counsel, therefore the statement should be suppressed from these proceedings as Fruit of the Poisonous Tree.

### *1. Introduction*

The Fifth Amendment of the United States Constitution protects those accused of a crime by providing them with the right against self-incrimination. The Sixth Amendment of the United States Constitution protects the accused by affording them with the right to be represented by counsel when accused of a crime. Those protections were the focus of the United States Supreme Court in their 1966 decision in *Miranda v. Arizona*, 384 U.S. 436.

The crux of the holding in *Miranda* is that law enforcement must advise a person accused of a crime of that person's Fifth and Sixth Amendment protections before engaging in custodial interrogation. 384 U.S. at 470-71. Further, in the event that the accused asserts his/her right to remain silent, 'the interrogation must cease."

*Id.* at 474. In the event that the accused asserts that he/she wants an attorney present for interrogation, the interrogation must cease until an attorney is present. *Id.*

"Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Bradford v. Davis*, 923 F.3d 599, 618 (9th Cir., 2019)(citing *Miranda*, 384 U.S. at 444).

In the event that law enforcement fails to provide the accused with a full warning of the accused's constitutional rights prior to engaging in custodial interrogation, any statements obtained through that interrogation should be suppressed. *See generally Miranda*, 384 U.S. at 436.

### 2. Fifth Amendment Right to Remain Silent

As noted above, the Fifth Amendment of the United States Constitution protects those accused of a crime from being compelled to incriminate himself. This protection was extended to the context of custodial interrogation in *Miranda*, requiring that law enforcement must warn the accused of the right to remain silent prior to engaging in custodial interrogation. 384 U.S. at 470-71.

> The Supreme Court has made clear that once a person being questioned indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries . . . . If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.

> Any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."

*Jones v. Harrington*, 829 F.3d 1128, 1136-37 (9th Cir., 2016)(citing *Miranda*, 384 U.S. at 445, 473-74)(Punctuation and quotation marks omitted).

In determining whether a person is "in custody" for purposes of *Miranda*, courts employ a "totality of the circumstances" approach.

> An officer's obligation to administer *Miranda* warnings attaches only where there has been such a restriction on a person's freedom as to render him in custody. Whether a suspect is in custody turns on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. This inquiry requires a court to examine the totality of the circumstances from the perspective of a reasonable person in the suspect's position.

*U.S. v Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir., 2005)(citing *U.S. v. Crawford*, 372 F.3d 1048, 1059 (9th Cir., 2004))

In determining whether a person's waiver of his *Miranda* rights is valid, the courts also look to the "totality of the circumstances" surrounding the waiver. "A waiver is knowing and intelligent if, under the totality of the circumstances, it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (citation and quotation marks omitted).

> [T]he waiver inquiry has two distinct dimensions – first, it must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and second, it must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. A waiver satisfies this two-part standard only if the totality of the circumstances

> surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension.

*Cook v. Kernan*, 948 F.3d 952, 967 (9th Cir. 2020)(citations and punctuation marks omitted).

### 3. Sixth Amendment Right to Counsel

*Miranda* also extended the Sixth Amendment right to counsel to the context of custodial interrogation. 384 U.S. at 474. A similar issue was examined by the Supreme Court in *Edwards v. Arizona*, 451 U.S. 477 (1981).

> We further hold that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards*, 451 U.S. at 484-85.

"As the Supreme Court has recognized, requests for counsel are to be understood as *ordinary people* would understand them." *Sessoms v. Grounds*, 776 F.3d 615, 628 (9th Cir. 2015)(citing *Conn. v. Barrett*, 479 U.S. 523, 529 (1987)). [T]he defendant must express his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*, namely, an expression of a desire for the assistance of an attorney in dealing with custodial interrogation. . . ." *Robertson v. Pichon*, 849 F.3d 1173, 1186 (9th Cir., 2017)(citation omitted).

In *Sessoms*, it was held that it was a violation of *Miranda* and *Edwards* for police to interrogate the accused after the accused asked for an attorney to be present during interrogation. *Id.* "Once a lawyer is requested, questioning must stop." *Id.*

*4. Analysis*

<u>i. Mr. Pearson's Fifth Amendment Right to Remain Silent was Violated</u>

Mr. Pearson's right to remain silent was violated by law enforcement the moment that agents Wells, Steen, and Savage attempted to compel Mr. Pearson to engage in custodial interrogation after Mr. Pearson unequivocally asserted the right to remain silent and to counsel. It is clear that, under the totality of the circumstances, Mr. Pearson was in custody. It is also clear, under the totality of the circumstances, that Mr. Pearson did not waive his right to remain silent.

Mr. Pearson told the agents he did not want to speak until an attorney was present; that is a direct invocation of the right to remain silent, thus the agents should have left Mr. Pearson alone until an attorney was provided. Mr. Pearson, who was under the care of Sacred Heart while still under pre-trial incarceration, was also under the effects of strong pharmaceutical drugs while he made this request for counsel. Instead of attempting to contact Mr. Pearson's counsel, the agents stuck around Mr. Pearson's room and coerced the drugged Mr. Pearson into testifying against himself.

<u>ii. Mr. Pearson's Sixth Amendment Right to Counsel was Violated</u>

Mr. Pearson's right to counsel was violated by law enforcement once the Agents engaged in questioning of Mr. Pearson without an attorney present. Mr. Pearson made an unequivocal assertion that he wanted an attorney present when speaking to

the agents. Yet, the agents did not obtain counsel for Mr. Pearson. Further, the agents had actual knowledge that Mr. Pearson was under the influence of strong pharmaceutical drugs, but still came back to question him without first providing an attorney. Mr. Pearson did not reinitiate the questioning, the agents came back within hours to visit Mr. Pearson in his hospital bed to see if he was ready to talk.

The Ninth Circuit authority on this issue is clear – the questioning by the agents should have ceased upon Mr. Pearson's request for an attorney, and only once an attorney was present should the agents have attempted to reengage Mr. Pearson. This is a blatant violation of Mr. Pearson's constitutional rights and *Miranda* made all the more egregious by his medical status in the hospital having shot himself and on strong pharmaceutical drugs yet having clearly invoked his right to counsel.

### III. CONCLUSION

In sum, both Mr. Pearson's Fifth Amendment protection against incrimination, as well as his Sixth Amendment right to counsel were blatantly violated by law enforcement during the July 24, 2019 interrogation. Thus, the statements made by Mr. Pearson should be suppressed from use in these proceedings as Fruit of the Poisonous Tree.

DATED this 19th day of February, 2021.

**PARTOVI LAW, P.S.**

*/s/ David R. Partovi*
DAVID R. PARTOVI, WSBA #30611

CERTIFICATION

I hereby certify that on 19th day of February, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which I will sent notification of such filing to the following, and/or I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

>William Hyslop- United States Attorney
>Caitlin Baunsgard - Assistant United States Attorney
>Eastern District of Washington
>920 W Riverside Suite 300
>P.O. Box 1494
>Spokane, WA 99210-1494
>Telephone: (509) 353-2767

**PARTOVI LAW, P.S.**

s/ *David R. Partovi*
DAVID R. PARTOVI, WSBA #30611
Attorney for Defendant