David R. Partovi
**PARTOVI LAW**
900 N. Maple, LL
Spokane, WA 99201
Telephone 509-270-2141
Facsimile 509-326-6102

Attorney for Defendant Patrick Elliot Pearson

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 2:19-CR-0111-WFN-3 |
| vs. ) | |
| ) | DEFENDANT'S |
| PATRICK ELLIOT PEARSON, et al. , ) | SENTENCING MEMORANDUM |
| ) | |
| Defendant. ) | |
| _____ ) | |

COMES NOW Defendant PATRICK PEARSON by and through his attorney of record, David R. Partovi, and submits the following Sentencing Memorandum.

## BACKGROUND AND SUMMARY

Patrick Elliot Pearson was raised on instability and substance-induced violence. His upbringing is a familiar story when discussing such counts of conviction, but Patrick Pearson did not set out conspire with a drug dealer. Mr. Pearson set out to be what he had been since his early 20's, an automotive mechanic. When he and Mr. Farias-Cardenas became involved, it was in support of Mr. Farias-Cardenas' business of

DEFENDANT'S SENTENCING MEMO
Cause No. 2:19-CR-0111-WFN
Page 6 of 6

**PARTOVI LAW**
900 N. Maple, LL
Spokane, Washington 99201
(509) 270-2141 dir
(509) 326-6102 fax

buying cars at auction, fixing them up and re-selling them. Mr. Farias-Cardenas held a license to buy those cars and Mr. Pearson possessed the skill and experience to repair them for resale.

At Mr. Farias-Cardenas' expense, Mr. Pearson lived in a trailer behind a fully functional auto mechanic shop where he worked as an auto mechanic. Mr. Farias-Cardenas was also distributing controlled substances that he had access to through his family connections. Mr. Pearson did what Mr. Farias-Cardenas directed him to do in furtherance of that distribution scheme, but Mr. Pearson did everything Mr. Farias-Cardenas directed him to do. This included mowing his lawn, picking his children up from school and many other sundry tasks. Distribution of drugs was not Mr. Pearson's primary role, but it was a significant part of Mr. Farias-Cardenas' business and Mr. Pearson was thus involved. As is true in many federal drug distribution conspiracies, Mr. Pearson was surprised that he could be held responsible for the weight of substances that others like Joshua Stine and his down line distributors were moving. Similarly, Mr. Pearson could not understand how he could be held responsible for the weight distributed by Mr. Farias-Cardenas' uncles. But relevant conduct casts a wide net.

## MAINTAINANCE OF THE MAE VALLEY PREMISES

As is discussed in Mr. Person's first objection to the presentence investigation report, he did not maintain the Mae Valley premises for the purpose of drug distribution. As is outlined in the guideline analysis in the objections, Mr. Pearson did not own

DEFENDANT'S SENTENCING MEMO
Cause No. 2:19-CR-0111-WFN
Page 6 of 6

**PARTOVI LAW**
900 N. Maple, LL
Spokane, Washington 99201
(509) 270-2141 dir
(509) 326-6102 fax

anything significant on that property. He did not pay rent or control access to the property. No drugs were stored there beyond personal use. No drugs were manufactured or even re-packaged there. Nobody came to that location to buy or sell drugs. Mae Valley was maintained entirely by Mr. Farias-Cardenas and he controlled who was permitted to go there and what business was conducted there. Although it was provided to Mr. Pearson and Ms. Dygert as a residence, its primary purpose was storing and repairing automobiles for Mr. Farias-Cardenas to resell.

## ACCEPTANCE OF RESPONSIBILITY

Mr. Pearson accepted responsibility for his conduct, if not the weight attributed to him at trial, but he did so *outside* of the courtroom. His only options for resolving this case short of a trial would have put him in prison for so long that *if he ever got out* it would only make him a burden on any family he still had. He had no incentive whatsoever to waive any of his rights or to accept responsibility *inside* the courtroom. His way of accepting responsibility while preserving his rights and managing his incentives was to stipulate away many of the evidentiary responsibilities the government would otherwise have had to take on. Those stipulations were extensive and they were truly Mr. Pearson's choices. Counsel never suggested he should or should not enter into them, only what the consequences would have been either way. Mr. Pearson chose to make the government's job significantly easier, while still maintaining his rights. Although this is not clearly within the guideline provisions of USSG §3E1.1

DEFENDANT'S SENTENCING MEMO
Cause No. 2:19-CR-0111-WFN
Page 6 of 6

**PARTOVI LAW**
900 N. Maple, LL
Spokane, Washington 99201
(509) 270-2141 dir
(509) 326-6102 fax

or Note 2, the Court is urged to consider it as a factor under 18 USC 3553(a) in determining what sentence is sufficient but not greater than necessary to accomplish the goals of sentencing this 49-year-old.

## PRISON TATOOS AND AFFILIATIONS

It is important to Mr. Pearson that the Court be fully informed as to his sociopolitical beliefs as they related to his prison tattoos and the concepts raised by his jail cellmate at trial. Mr. Pearson is proud of his heritage and while in prison needed to affiliate himself with his racial group. There is an important distinction in that affiliation between white pride and racism. Honest debate should be distinguished from race-baiting. If it is, there has long been a clear distinction between pride and hate. Mr. Pearson is proud of his white heritage and thinks others should be proud of their heritage, regardless of skin tone. That distinction can be, and increasingly is, blurred. Mr. Pearson wants the Court to know that his affiliations, his tattoos and his philosophy has been and continues to be one of pride, not hate.

## SENTENCING RECOMMENDATION

The Court's sentence in this matter will almost certainly have Mr. Pearson spending the rest of his life in prison. If he is sentenced to the low end of the guideline suggested by the probation department, 30 years, it will take him just past the CDC's life expectancy tables from 2018 give or take earned release. See www.cdc.gov/nchs/data/nvsr/nvsr70/nvsr70-1-508.pdf at page 3.

DEFENDANT'S SENTENCING MEMO
Cause No. 2:19-CR-0111-WFN
Page 6 of 6

**PARTOVI LAW**
900 N. Maple, LL
Spokane, Washington 99201
(509) 270-2141 dir
(509) 326-6102 fax

If, as is suggested in Mr. Pearson's objections to the PSIR at page 5, the Court were to accept a guideline range of 324-405 it would shave only 3 years off of his sentence at the low end. Given Mr. Pearson's specific health history, it is likely a moot point.

Thus, consistent with the arguments outlined in Mr. Pearson's objections it is respectfully submitted that a sentence of 324 months is sufficient and not greater than necessary to accomplish the goals of sentencing outlined in 18 USC §3553(a).

## WHY THE COURT SHOULD FOLLOW THIS RECOMMENDATION

In anticipation of this argument, I asked myself why the Court should follow this recommendation. In asking that question I asked myself if I would follow this recommendation. In asking that question, I sought to put myself in Mr. Pearson's position. I realized I could not. I was raised in stability by a loving family that was together when they were not working hard to provide for me. In turn, I am raising my children in stability in a loving family that is together when it is not working hard to provide for them. I was not and my children are not raised in a manner described in paragraphs 309-311 of the PSIR. Reading the Court's Wikipedia page I see a judicial officer born in Seattle, earning a bachelor's degree from the University of Washington before serving as a USAF First Lieutenant before a life in the law and US Courts. I can only surmise that the Court was not raised as is described in paragraphs 309-311 of the PSIR.

DEFENDANT'S SENTENCING MEMO
Cause No. 2:19-CR-0111-WFN
Page 6 of 6

PARTOVI LAW
900 N. Maple, LL
Spokane, Washington 99201
(509) 270-2141 dir
(509) 326-6102 fax

This is not to suggest that the Court is not ideally placed to sentence Mr. Pearson. It is only suggested to bring us all back to who we are and remember that it is a significant stretch for any of us to honestly sit in judgment of this very different human. 324 vs. 360 vs. Life. Why is any one of these any different from the other for Patrick Pearson? Each is sufficient, but two are greater than necessary.

**DATED** this 18th day of November 2021.

*/s/ David R. Partovi*

_____
DAVID R. PARTOVI, WSBA #30611
Attorney for Patrick Pearson

DEFENDANT'S SENTENCING MEMO
Cause No. 2:19-CR-0111-WFN
Page 6 of 6

**PARTOVI LAW**
900 N. Maple, LL
Spokane, Washington 99201
(509) 270-2141 dir
(509) 326-6102 fax

# CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following, and/or I hereby certify that I have mailed by United States Postal Service the documents to the following non-CM/ECF participant(s):

Caitlin Baunsgard
Assistant United States Attorney
920 W. Riverside, # 300
Spokane, WA 99201

                                        */s/ David R. Partovi*
                                        DAVID R. PARTOVI, WSBA 30611
                                        Attorney for Patrick Pearson

DEFENDANT'S SENTENCING MEMO
Cause No. 2:19-CR-0111-WFN
Page 6 of 6

**PARTOVI LAW**
900 N. Maple, LL
Spokane, Washington 99201
(509) 270-2141 dir
(509) 326-6102 fax